# Peoples Bank & Trust Co. *v.* Tissier Hardware Co.

*Ejectment.*

(Decided Dec. 19, 1907. 45 South. 624.)

1. *Words and Phrases; Subject.*—The word "subject to" means "liable", "subordinate", "submissive."

2. *Landlord and Tenant; Lease; Construction; Renewal.*—By the terms of the lease the lessee held for two years, with option, upon seasonable notice, of renewing same from one to five terms of two years each, subject only to a sale of said property. On timely notice given before the expiration of either term the lease was renewed for two years and thereafter for two more terms of two years each and notes executed for all of said term, part of which were collected. Held, that the words subject to sale, qualified the word option, and not the words from one to five terms of two years each, and that a sale of the property did not affect the lease before the expiration of the last renewal and that the lessee was entitled to hold until the expiration of the renewal period by complying with the terms of the agreement.

APPEAL from Selma City Court.

Heard before Hon. J. W. Mabry.

Ejectment by the People's Bank & Trust Company against the Tissier Hardware Company. Judgment for defendant, and plaintiff appeals. Affirmed.

A. L. McLEOD, and J. L. SATTERFIELD, for appellant. Under the lease it is not the option that is subject to a sale of the property, but it is the number of terms the lessee can hold, if the lessee should choose to exercise its option at the expiration of the lease. If the lessee had failed to exercise the option at the time and in the manner provided it could not have exercised it at all, except by the mere grace of the lessor.

PETTUS, JEFFRIES & PETTUS, and H. F. REESE, for appellee. All contracts, including leases of every descrip-

tion are most strongly construed against the lessor, and
if any doubt exists as to its meaning, the contract shall
be construed most strongly in favor of the lessee.—24
Cyc. 916; *Griffin v. Henderson,* 49 Cal. 566; *In re Wair,*
19 Am. Dec. 262; *Raynolds v. Washington County,* 49
Atl. 707; *Schmol v. Fiddick,* 34 Ill. App. 190.

HARALSON, J.—For a statement of the facts of the
case, as to which there is no conflict, we adopt as very
fair and full, the statement of the attorneys for the
plaintiff, the appellant.

The action was one in the nature of an action of eject-
ment, to recover a storehouse and lot in Selma. The
property belonged to one Billingslea in his lifetime, who
died in 1896, leaving a will, and the property then pass-
ed into the hands of L. J. Haley, Jr., his executor and
trustee.

On the 2d of April, 1900, said Haley, as executor and
trustee, and Mrs. M. G. Hendon, one of the legatees un-
der the will, executed a lease of said premises to the de-
fendant, Tissier Hardware Company, for two years from
the 1st of October, 1900, with option of renewal, at a
monthly rental of $83.33, for which defendant gave its
24 promissory notes, payable monthly, and went into
the possession of the premises under the lease, and has
continued in possession ever since; and the plaintiff hav-
ing purchased the property, the question to be decided
is, whether the term of the lease had expired before this
suit was brought, at the January term, 1907, of the city
court of Selma.

One of the provisions of the lease, after specifying that
the lessee should give notes payable monthly at the City
National Bank of Selma, was as follows:

"It is further agreed, that at the expiration of this
lease, the second party [the defendant] shall have the

option of renewing same, from one to five terms of two years each, subject only to a sale of said property, by giving notice to first party, on or before the 1st of July, prior to the expiration of such term."

In April, 1902, the lessee, the defendant, for a renewal of the lease, delivered to the lessors 24 other promissory notes for $83.33, each, payable, respectively, on the 1st day of each month, from the 1st of October, 1902, to the 30th of September, 1904, both inclusive.

In January, 1904, the lessee, defendant, as an expression of its option for another renewal of the lease, delivered to the lessors 48 more and other notes for $83.33 each, payable, respectively, on the 1st day of each month, from the 1st day of October, 1904, to the 1st day of October, 1908, which notes the plaintiff (appellant) received, and collected some of them, up to the bringing of this suit.

About February, 1906, the property was duly sold by order of court, for division among the legatees under the will of said Billingslea, and the plaintiff, appellant, became the purchaser of the property and received a regular deed to it.

After the 1st of October, 1906, and in January, 1907, the plaintiff, as such purchaser, brought this suit against the defendant for the property in question. The court, sitting without a jury, rendered judgment for the defendant, and afterwards, overruled a motion for a new trial, and these rulings are the only assignments of error to be considered.

The whole case depends, as is agreed between the parties, upon a proper construction of the provision of the lease above quoted—the appellant contending, "that it is not the option that is subject to a sale of the property, but that it is the number of terms the lessee can hold" —the contention of the appellee being, that the words,

"subject to sale," in the lease, modify the word, "option," therein, and that they do not modify or refer to the words, "from one to five terms of two years each," holding that, "under the terms of the lease and facts, appellee is entitled to the property in dispute to November 1st, 1908"; and that outside the terms of the lease, appellee being in possession and owner and appellant having received 48 notes and having collected a portion of them, appellee is entitled to the possession of such property, to November 1, 1908.

In 24 Cyc. 914, 915, it is laid down, that "the general rule is, that a written lease is to be construed according to the intention of the parties thereto, and that such intention is to be gathered from the whole instrument, rather than from a single clause thereof; and where the language of the lease is not absolutely clear, the circumstances attending its execution, and the acts of the parties subsequent thereto, may be scrutinized in ascertaining such intention. * * * There is a canon of construction, that all contracts involving leases of every description, shall be mostly strongly construed against the grantor [lessor], and if there be any doubt and uncertainty as to the meaning of any such lease, it shall be construed most strongly in favor of the grantee."

For the sake of construction, let us paraphrase the sentence of the lease under consideration, in accordance with the language of that sentence, as it appears in the lease, and without any violence thereto. When so paraphrased, it may be made properly to read:

"It is further agreed, that at the expiration of this lease (October 1, 1902), the second party [the defendant] by giving notice to the party of the first part, on or before the 1st of July, 1902—prior to the expiration of said lease—shall have the option of renewing the same from one to five terms of two years each, subject only to

a sale of said property." The words, "from one to five terms of two years each," were manifestly intended to signify the length of time the option might be exercised for—either for two, four or five years, the same as if it had provided for a renewal, according as the lessee might exercise it, for two years, or, if he saw fit, for four or ten years, the words, "five terms, each," being employed to designate the longest period of time, as stated, for which the option might be exercised, not for successive leases, every two years, but for one term of four or ten years—which is the same as two, or "five terms."

The action of the parties under the lease indicates their intention. Before the term expiring October 1, 1902, by timely notice and expression of their option, the lease was renewed, from October 1, 1902, to October 1, 1904. Twenty-four lease notes were executed by defendant and received by the lessors, for such a renewal, and these notes were collected. Before the expiration of that term (October 1, 1904), by timely notice and expression of the option, the lease was again renewed, by the execution of 48 notes for the monthly rent, from October 1, 1904, to October 1, 1908, which notes were received by the lessors, and were collected by them, up to 1906, when the sale of the property under the chancery proceedings was effected. This indicates clearly, that the parties construed the lease in favor of defendant's option to renew the same from October, 1904, to October, 1908. So far then, as the intention of the parties goes, in construction of the lease, it is unmistakable, that it was their purpose to renew the same, until 1st October, 1908.

But, the plaintiff contends, that the words of the lease, "subject only to a sale of said property," terminated this option—cut it off and rendered it of no effect, after the property was sold.

The word "subject" has no such signification. It would be directly in opposition to the terms of the contract of lease, as construed by the parties themselves. It means, according to lexicographers, "liable, subordinate, obedient, submissive."—Webster.

"The provision in a memorandum of an agreement for a transfer of stock, that the transfer was 'subject to' a certain agreement named, 'give to the transferee the benefits, as well as it imposed the disadvantages, provided for in that agreement.' "—27 Am. & Eng. Ency. Law (2d Ed.) 195, citing Bacon v. Grossmann, 71 App. Div. 578, 76 N. Y. Supp. 188.

Our construction is, that the option was subject to a sale of the property, to the extent of foreclosing or cutting off an expression of the same, if not timely expressed, but when it became expressed, it was not abrogated until the end of the term for which it was expressed. Otherwise, it would nullify the contract of the parties, which it could not do, and place the lessee to disadvantage without benefit of same. If A rents a piece of property to B, for a year, ending October 1st of that year, and during the term, A sells the property to C, which he might do, without words in the rental contract to forbid it, this would not terminate the lease, but make it subject to the sale—the lease terminating on the 1st of October, thereafter, no benefit to the vendor nor disadvantage to the vendee being wrought by the sale. The words, "subject only to a sale of said property," must not be construed as entirely for the benefit of the lessors, but they apply as well to the lessee, reserving to him all the rights he acquired under his lease.

It is significant to refer to brief of counsel for appellant, where they say, "We do not contend that the lessee could be ousted, except at the end of a term, and we think the renting was divided into terms of two years each."

Under the lease, the term of defendant did not expire until October 1, 1908, and before that time, the court correctly held, it could not be ousted.

Affirmed.

TYSON, C. J., and DOWDELL and McCLELLAN, JJ., concur.